will start with Penn-Star v. Greater New York Mutual. Thank you, Your Honors. If it pleases the court, this is Michael Chauvin, and I represent proposed intervenor-defendant appellant, Greater New York Mutual Insurance Company. I'll refer in this argument as GNY. Your Honors, GNY's position is that law and equity of this case show that the district judge abused his discretion in of the magistrate judge, which would have permitted GNY to intervene in this matter as a right. Intervention as right has four factors. GNY must show it has an interest in the case. It must show that interest will be impaired by decision below. It must show that its interest is no longer being adequately represented. The fourth is timeliness. GNY's interest here, Your Honors, is it incurred and should be borne. So in timeliness, wasn't it always clear that the insured might choose not to defend the declaratory judgment action by your adversary and decide to rely on you as the insurer? No, Your Honor. It was, according to the magistrate judge and my adversaries, there was always a vigorous defense put up by the defendants in the case. I didn't ask that. I asked about the insured's interest. And wasn't it always clear that one route of action open to was to forego the cost of defending the declaratory judgment action and relying on your client to pay whatever had to be paid? No, Your Honor. That's not clear in this record and and nor would it be one because we don't know where that defense is. Counsel, why isn't it exactly as Judge Winter has said? Your interest and the settling party's interest were quite different from the very beginning. Now, you decided to rely on them. I don't quite know why, but why to say that you didn't ask to intervene when it was perfectly clear that there might be a difference? Your Honor, at the time of prior to September 13, 2018, due to the bifurcation of the case, there was only one issue before the court and that was whether the Penn Star policy could be rescinded. And up until that time, from their counterclaim, from the discovery, from everything, the defendants always maintained that the policy could not be rescinded. So there was only one, two sides of a coin to be on. Penn Star saying it could be rescinded or the other side of the defendant saying it could not be rescinded. And the underlying fire action for which this relates is a multi-million dollar action. My client does not insure the defendants in this case. They have the money of their own insurance. So what they're seeking is money that GNY is effectively… Why wouldn't you have made the motion to intervene much earlier? I mean, the moment you knew there was a lawsuit, even assuming there was certainly, you know, some shared interest, the safer and smarter thing would have been just to move to intervene back then. Your Honor, the only way we would have been potentially able to intervene would have been on a discretionary one. And handily, given that the interests were fully represented, and again, I refer to the vigorous defense that Magistrate Judge Titillion said, it was clear that they would defend it. And I call your Honor's attention, you bring up the settlement, but back as early as November 2017, it was represented to the court that there could be no settlement that would be binding on GNY. So there was no opportunity to think that there would be a settlement by the defendants because they represented to the Magistrate Judge. But if the settlement truly was not binding, then you're not prejudiced. I mean, you can't have it both ways. If the settlement could be binding, then clearly you have had an interest adverse and should have come in. If the settlement is in no way binding, then you're in just exactly the same situation as you were before. You can still go after them as you would have, and there's no prejudice. Your Honor, I would agree with that, 100%, because the problem we have here, though, is on appeal, as your Honors may have seen, they're seeking to bind us to the judgment. But to answer your Honor's question directly, yes, if there's no collateral estoppel, issue estoppel, res judicat effect, which GNY maintains, and it has no bearing on us, and we could re-litigate it, then your Honor's correct. There would arguably be no prejudice to us. But I don't think you can have it both ways, so that you either have a situation where you might be prejudiced, and then that is something that was clear at that time, and then you should have intervened at that time, or you're not prejudiced because there was no prejudice, cannot be beyond the court's discretion. Your Honor, again, I am in agreement with you. If there's no res judicata effect, then there really couldn't be prejudice. However, we know they've made clear they believe it's res judicata and binding on us, notwithstanding that GNY never had the opportunity. That's the whole crux of the argument here, is GNY never had the opportunity. So, if your Honor's correct, and it's not res judicata and binding on us. You had an opportunity throughout. Your Honor, I didn't hear you, I'm sorry. I understand why you're doing this, but to say you had no opportunity is really to say we missed an opportunity, therefore, we had no opportunity. Again, Your Honor, GNY could not have intervened. We can't intervene when there is a party adequately representing the interest that rescission should not occur. That is your conclusion. That is your conclusion. What we are saying is that that isn't the way that the district court looked at it and would have allowed you to intervene because you do have a different interest had you done so on time. Right, Your Honor, and that's where we think it is an abuse of discretion because that that's really not the case. There was, again, you can either rescind the policy or can't. When they represent they can't settle and that they won't rescind the policy. You have one minute. You have one minute. Thank you. That they can't come to an agreement on that and that at all times they're defending, at all times defending the fact that that policy must be in effect and that is exactly our interest. We are saying the exact same thing. The Penn Star policy needs to be in effect. We're not focusing on the motives and that's where the district judge focused on, why we wanted to intervene. It was solely the interest, whether the Penn Star policy needed to be in effect and all GNY wants is the opportunity, whether it's in this case or to Judge Winter's comments earlier about another case. Well, we don't have the other case in front of us. Yeah, we'll hear from the other side and then you have some time for rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honors. Brad Westley for Penn Star Insurance Company in this matter. Can everyone hear me? Yes. GNY insurance is not so much a putative intervener as they are proposed intermediators. The dispute is as to the formation of the contract and the insurance policy based on what was represented to Penn Star, the type of business it writes, what it intended to write, and what GNY wants is to prevent the rescission so that they can pursue a contribution action. Now, the court has focused on this purported inconsistency between statements I made at the initial conference about the potential for reaching a settlement and Penn Star's later accepting Maintenance Assets Management's offer of judgment. So I'll start with that because the court has also already considered that. The fact of the matter is that while both of those matters contemplated a settlement, they were not actually the same. It's the same word, but it meant different things. If the initial discussion was about a compromise settlement wherein Penn Star would have been paying some benefits under the policy as compared to the later in time offer of judgment from Maintenance Asset Management that essentially conceded Penn Star's right to prevail and obtain all the relief that it sought in the amended complaint. The proposed judgment is fair and reasonable. The representations in the insurance applications were made by neither GNY nor its addition nor its name insured Algen had any... But counsel, counsel, none of that is what is before us. What is before us is simply whether at the appropriate time opposing side should have realized that its interest and your interest were not co-equal and therefore should have come in then. All the rest is talk. Very well, let me address that if I may. GNY argues to the court that it was not provided notice of Penn Star's action and in the next breath that informs the court that they were monitoring the docket to assure that Maintenance Asset Management's interests were protected by the existing parties. I think what I'm hearing is it's not so much a notice argument. It's more that that he's saying as a legal matter they would not have been allowed to intervene. How do you respond to that? They had every opportunity to intervene. We informed them on multiple occasions. No, no, no. In terms of my understanding of what they're saying is they would not have met the requirements for permissive intervention if they had tried. So how do you respond to that? If they couldn't meet them then they couldn't meet them now. But the point is that I guess the point is that they're saying that their interests were adequately represented at the time so that would have precluded permissive intervention. I don't think that the record bears out that GNY's interests were represented by Maintenance Asset Management at any time and the record can look you can look to the counter claim as to the amended complaint. It's in the appendix at record 85 and the counter claim doesn't say anything. GNY, Algen Management, or the building owners as additional insurers. The pleadings then do not disclose anything that Maintenance Asset Management was protecting the interests of GNY. Similarly, GNY's reply brief states that Penn Star did not suggest or provide any evidence that GNY's interests were not being adequately represented prior to the offer of judgment. That's in the reply brief at 20. But actually the record at appendix 408 and 409 contains a February 21, 2018 letter from Penn Star to GNY and specifically to Mr. Fitzpatrick that expressly states that Maintenance Asset Management had not presented Penn Star at that time with any information that Maintenance Asset Management intended to include Algen Management as an additional insurer. Consequently, seven months before GNY moved to intervene, Penn Star specifically informed them that Maintenance Asset Management was not disclosing anything to Penn Star about additional insurers. The only possible conclusion from that information was that Maintenance Asset Management was not protecting the interests of GNY in their decision. Therefore, to answer your question, they could have intervened on a permissive intervention basis much earlier than they thought. Their motion to intervene was substantially late. It's prejudicial to the parties. They came in at the conclusion or near the conclusion of discovery and just to sit back and say, well, we're going to wait and see what happens and if we don't like the outcome, we'll then seek intervention is not reasonable. The standard here is not a subjective one where GNY eventually came to the realization of, gee, perhaps we should intervene. And in their brief, the reply brief at 19, they say and reiterate several times that their intervention was timely because it was filed 26 days after it became aware of its interests were no longer protected. But the appropriate standard is not when they became aware of it and their subjective realization. It's when was it objectively reasonable for them to intervene. And here, Maintenance Asset Management's counterclaim provides no indication that Maintenance Asset Management was protecting GNY's interests and Penn Star's February 21, 18 letter specifically informed GNY that Maintenance Asset Management had not presented Penn Star with any information intending to include Algin Management as an additional insured under Penn Star's policy. So as a consequence of those things, the application was substantially late and the district court appropriately found. In light of the New York Court of Appeals decision and Admiral Insurance Company, the Detroit contractors, the later acquired rights of an additional insured are extinguished by a policy if it is determined to be void from its inception because of misrepresentations. GNY, in effect, seeks to enforce its later acquired rights under a policy that, according to the Court of Appeal in New York, should extinguish those rights. And the contentions about res judicata don't apply so much here as the fact is if the district court orders the rescission of the policy or that it's void ab initio, then the policy doesn't exist. So there would be no policy... All that is not before us. The only thing that is before us is whether they could intervene now. So don't try to get us to about what would happen in these other suits which are not now before us. I've presented my argument as to why they could have and should have intervened if they thought that was appropriate at an earlier date. I would reiterate that in the action before the district court, the court ordered and the parties understood that the case was to proceed on a bifurcated basis, first and foremost, with precision action, and then if that didn't resolve the case, to proceed in declaratory judgment. Neither GNY nor Algin Management nor the building owners had anything to do with the insurance application submitted to Penn Star. Precision action looks to what the insured knew about its operations before the applications were submitted and at the time of the application. And GNY, their interests are contingent and occurred later in time. So they were not necessarily an appropriate party to proceed into the precision action and that's why I say that they were more intermeddlers or proposed intermeddlers than they are punitive interveners. I think that the court should confirm the Thank you. We'll hear the rebuttal. Thank you, your honors. Um, real quick, my adversary, really Penn Star's position here, is that the record is clear that GNY's interests were not the same. But again, given the fact that there was only one issue before the court, rescission, you can only be on one side of that point. You can either be in favor, that was Penn Star, or against rescission. And Penn Star refers to the actual counterclaim. And they come out and say, well that counterclaim proves they were seeking coverage for themselves. That's not what we're talking about. We're talking about rescission. Again, could the policy be rescinded? Either yes or no. The defendant, Mainenson McAllison, said at all times, no. And that's what GNY is saying. No. So we have the exact same interest. We always did. Which is why GNY would not have been able to intervene earlier. Because that's a factor the court's going to consider. Was there was a vigorous defense. Because at all times, the defendants were vigorously defending that issue. And for a magistrate judge to say that, for even plaintiffs to adopt that, that there was a vigorous defense. We know that GNY's interests at all times were adequately represented. And that is why the abuse of discretion occurred. Another thing that counsel referenced was one minute. Thank you. Thank you. The prejudice to the existing parties. And Your Honor, notably, the defendants, they never opposed GNY's motion to claim. In fact, there is no record at all that they would be prejudiced by this. If you look at Penstar, Penstar is paying their defense fees in the underlying action. So arguably, the defendants are getting a benefit. Penstar's alleged prejudice is that they have to continue to pay defense fees. But if you go back to November 29, 2017, when they said they couldn't settle to the magistrate judge, that prejudice isn't real. They knew they couldn't settle, yet they're claiming to this court their prejudice because they couldn't settle. The notion that we're intermeddlers when they knew about our rights from the start and told the courts about it is contrary to the record. So, Your Honors, GNY wants their opportunity. They want their due process to be able to challenge the rescission. And we appreciate Your Honor's time for this argument. Thank you. Thank you. Thank you both. The court will reserve decision.